**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

This opinion was filed for record

at \_\_\_\_8:00am\_\_\_ on \_\_Feb 2, 2017\_\_

SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 0 2 2017

CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID DUNNINGTON and JANET WILSON, | ) ) ) | No. 91374-9 |
| Petitioners, | ) ) | |
| v. | ) ) | En Banc |
| VIRGINIA MASON MEDICAL CENTER; UNKNOWN JOHN DOES AND JOHN DOE CLINICS, | ) ) ) ) | |
| Respondents. | ) ) ) | Filed \_\_\_FEB 0 2 2017\_\_\_ |

JOHNSON, J.—This case involves a medical malpractice action for a lost chance of a better outcome. The parties jointly sought direct discretionary review under RAP 2.3(b)(4), challenging two pretrial rulings. Two questions of law are before us: (1) whether a court should use a "but for" or "substantial factor" standard of causation in loss of chance cases and (2) whether evidence relating to a contributory negligence defense should be excluded based on the plaintiff's failure to follow his doctor's instructions. The trial court decided that the but for standard applies and the contributory negligence defense was not appropriate in this case. We affirm in part and reverse in part.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

FACTS AND PROCEDURAL HISTORY

On September 1, 2011, David Dunnington saw his primary care provider, Dr. William Kirshner, reporting that he had a lesion on the plantar surface of his left foot that arose after a puncture wound. Dr. Kirshner arranged an appointment with Dr. Alvin Ngan, a podiatrist at Virginia Mason Medical Center. Dr. Ngan saw Dunnington the same day and diagnosed the lesion as a pyogenic granuloma—a benign lesion.

Dr. Ngan recommended two courses of possible treatment: it could be surgically excised or conservatively treated with cryotherapy. Dunnington chose the conservative treatment. Dr. Ngan administered the treatment and instructed Dunnington to return in 10 days. When Dunnington returned on September 15, 2011, the lesion appeared recalcitrant. Dr. Ngan once again informed Dunnington of his options, which included surgical excision and biopsy. Dr. Ngan favored surgical excision, but Dunnington chose conservative treatment. Dr. Ngan instructed Dunnington to return in 10 days, but he did not. On December 16, 2011, Dunnington contacted Dr. Ngan, complaining of continued soreness, and requested an MRI that was performed on December 26, 2011. When Dunnington returned to the clinic the following day to discuss the results of his MRI, Dr. Ngan noticed the lesion was enlarged from the previous visit and he recommended surgical excisional biopsy. Dr. Ngan did not suspect cancer. Dunnington deferred making a

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

decision because he wanted to discuss the issue with his family. Dunnington then saw Dr. Ryan Bierman, seeking a second opinion regarding the surgical excision. Dr. Bierman also diagnosed the lesion as a benign, trauma-induced pyogenic granuloma. They discussed all options, including surgical excision and biopsy, but Dunnington chose conservative treatment once more. On January 31, 2012, Dunnington consulted a dermatologist, Dr. Arlo Miller, who performed a punch biopsy. This resulted in a positive finding of melanoma. On February 16, 2012, Dunnington underwent surgical excision and the cancer was removed. However, the melanoma recurred. Dunnington went through chemotherapy and radiation treatment, which proved unsuccessful, and the cancer recurred. Dunnington's left leg ultimately had to be partially amputated. He now appears to be cancer free.

Dunnington brought a medical negligence action against Virginia Mason alleging that Dr. Ngan was negligent in Dunnington's diagnosis, which deprived him of a 40 percent chance that the melanoma would not recur had a proper diagnosis and treatment occurred. The defendant, Virginia Mason, asserted an affirmative defense of contributory negligence based on Dunnington's delay in returning for follow up care and his decision to seek a second opinion rather than undergo the recommended excision and biopsy. Dunnington moved to strike the affirmative defense or for partial summary judgment. Based on declarations, the court granted the motion, which the parties treat as a grant of partial summary

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

judgment. Virginia Mason's motion for reconsideration was denied. The trial court

also granted Dunnington's motion for a loss of chance jury instruction, but denied

his request for a substantial factor test instruction. Instead, the court determined

that a but for causation standard is the appropriate legal standard. The parties

jointly sought discretionary review of Dunnington's challenge to the loss of chance

and substantial factor jury instruction and Virginia Mason's challenge to the trial

court's dismissal of the contributory negligence defense.

ANALYSIS

Causation

We first recognized the lost chance of a better outcome cause of action in

*Herskovits v. Group Health Cooperative of Puget Sound*, 99 Wn.2d 609, 664 P.2d

474 (1983) (plurality opinion). Although a majority in that case recognized the

cause of action, several opinions were authored and no opinion garnered five votes:

the lead opinion by Justice Dore collected one supporting vote and a concurring

opinion by Justice Pearson collected three votes. Although both of these opinions

recognized the cause of action, they differed on its characterization. Most recently,

in *Mohr v. Grantham*, 172 Wn.2d 844, 262 P.3d 490 (2011), we revisited this issue

and expressly adopted Justice Pearson's analysis. *Mohr* contains a detailed and

comprehensive discussion of the cause of action, the principles underlying the

doctrine, and how the cause of action fits in our traditional and general tort

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

principles of medical malpractice, including duty, breach, injury, and proximate cause. *Mohr*, 172 Wn.2d at 850-57.

In *Mohr*, the plaintiff suffered a trauma-induced stroke and was permanently disabled. At the hospital, Mrs. Mohr suffered neurological symptoms but the physician failed to immediately treat her. Expert opinion established that she would have had a 50-60 percent chance of a better outcome with nonnegligent treatment. There, we adopted the characterization and analysis of the cause of action from the *Herskovits* concurrence and continued by noting,

> A plaintiff making such a claim must prove duty, breach, and that there was an injury in the form of a loss of a chance caused by the breach of duty. To prove causation, a plaintiff would then rely on *established tort causation doctrines permitted by law* and the specific evidence of the case.

*Mohr*, 172 Wn.2d at 862 (emphasis added). By emphasizing the basic requirement of tort law, we implicitly recognized that generally a but for test is the applicable standard. While we did not conclusively reject a relaxed causation standard, we suggested in *Mohr* that general tort law principles apply.

We have held in certain circumstances the substantial factor standard is appropriate to use:

> First, the test is used where either one of two causes would have produced the identical harm, thus making it impossible for plaintiff to prove the "but for" test. In such cases, it is quite clear that each cause has played so important a part in producing the result that

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

responsibility should be imposed on it. Second, the test is used where a similar, but not identical, result would have followed without the defendant's act. Third, the test is used where one defendant has made a clearly proven but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire.

*Daugert v. Pappas*, 104 Wn.2d 254, 262, 704 P.2d 600 (1985). Here, the plaintiff recognizes that when *Mohr* adopted the *Herskovits* concurrence, we rejected Justice Dore's analysis that the substantial factor test is used in all loss of chance cases. However, the plaintiff argues that in rejecting the lead opinion, we did not establish that a substantial factor test is *never* applicable. Thus, the plaintiff argues that the facts of this case fall into the limited set of circumstances where the substantial factor test is appropriate. In doing so, the plaintiff recognizes that a but for test generally applies, but argues it shouldn't under these facts.

The Court of Appeals has recently confronted this issue. Relying on both *Herskovits* and *Mohr*, Division Three adopted a but for causation standard in a loss of chance case. *Rash v. Providence Health & Servs.*, 183 Wn. App. 612, 634-35, 334 P.3d 1154 (2014), *review denied*, 182 Wn.2d 1028 (2015). In that case, the patient underwent a right knee replacement and the physician failed to give the proper medication after surgery. As a result, the patient suffered numerous complications that resulted in a 10-day stay, instead of being discharged a day after surgery. Although the plaintiff's expert could not provide an exact percentage of the loss of chance, he testified that the hospital's negligence was significant and

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

led to the patient's death. The plaintiff argued that a substantial factor test was appropriate. However, the trial court rejected this view and adopted a but for causation standard. The Court of Appeals affirmed the trial court holding that because *Mohr* adopted the *Herskovits* concurrence—the law in loss of chance cases—a but for causation standard was applicable.

This holding was reiterated by Division Three most recently in *Christian v. Tohmeh*, 191 Wn. App. 709, 730, 366 P.3d 16 (2015), *review denied*, 185 Wn.2d 1035 (2016). There, the physician failed to diagnose the plaintiff, resulting in a delayed postoperative surgery. The plaintiff would have had a 40 percent chance of diminished symptoms with nonnegligent treatment. The trial court granted the defendant's motion for summary judgment, concluding that the plaintiff did not satisfy her burden of proof as to the standard of care and proximate cause. Relying on *Rash*, the Court of Appeals reversed and determined that "the plaintiff must provide a physician's opinion that the health care provider 'likely' caused a lost chance of a better outcome," which she did. *Christian*, 191 Wn. App. at 730 (citing *Rash*, 183 Wn. App. at 631).

In a medical malpractice action, the plaintiff must satisfy traditional tort elements of proof: duty, breach, injury, and proximate cause. Our cases have consistently recognized two elements of proximate cause: cause in fact and legal causation. "Cause in fact refers to the 'but for' consequences of an act—the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

physical connection between an act and an injury." *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985) (citing *King v. City of Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974)). Yet, in a narrow class of cases, proximate cause is defined using a substantial factor test—it is an exception to the but for standard. Here, the issue is whether this case falls within a *Daugert* exception.

The plaintiff argues that the facts of this case fall within the first *Daugert* exception: there were two causes of the 40 percent lost chance—the cancer and Dr. Ngan's negligence. We disagree. The two causes—the cancer and the negligence—would not have caused the identical harm. The cancer itself cannot be a negligently causing factor. Dunnington had a 40 percent chance of a better outcome with nonnegligent treatment. Based on the plaintiff's expert, he had a 40 percent chance that the cancer would not recur and a 60 percent chance it would. What this means is that his existing cancer is what caused the recurrence, not the alleged negligence. This case is against only Dr. Ngan based on the asserted misdiagnosis that diminished Dunnington's 40 percent chance the cancer would not recur. It does not make sense to say that the cancer reduced Dunnington's chance the cancer would not recur. Although the plaintiff makes a case specific argument, his analysis could have broader implications. A key distinction of loss of chance cases is that regardless of the negligence, the ultimate injury is likely to occur. Thus, if we held that the underlying medical condition, such as cancer, is

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

also a cause of the lost chance, then we would essentially be holding that in every loss of chance case, the two causes, the negligence and the underlying medical condition, produce an identical harm. This would render a substantial factor test applicable in every loss of chance case involving medical malpractice—there will always be negligence and an underlying medical condition. Using a substantial factor test would be inconsistent with traditional tort law. Because the plaintiff fails to show this case fits within a *Daugert* exception, the substantial factor test is inappropriate.

Contributory Negligence

The hospital challenges the trial court's grant of the plaintiff's motion to strike pursuant to CR 12(f) or, in the alternative, motion for partial summary judgment on the issue of comparative fault pursuant to CR 56(a).[1] The parties treat the trial court's ruling as a grant of partial summary judgment, which we review de novo. *Gleason v. Cohen*, 192 Wn. App. 788, 794, 368 P.3d 531 (2016). The question in this case is whether a contributory negligence defense is barred as a matter of law. We hold it is not.

---

[1] The parties interchange the use of contributory negligence and comparative fault. For clarity, we will refer to the affirmative defense as contributory negligence. Contributory negligence does not automatically bar recovery for a tort victim; however, it can reduce damages. RCW 4.22.005.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In determining a plaintiff's contributory negligence,[2] "'the inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury.'" *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 182, 412 P.2d 109 (1966) (quoting *Heinlen v. Martin Miller Orchards, Inc.*, 40 Wn.2d 356, 360, 242 P.2d 1054 (1952)). "Whether there has been negligence or comparative negligence is a jury question unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." *Hough v. Ballard*, 108 Wn. App. 272, 279, 31 P.3d 6 (2001) (citing *Shook v. Bristow*, 41 Wn.2d 623, 626, 250 P.2d 946 (1952)). We must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party, and the motion should be granted if a reasonable person could reach only one conclusion. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

The hospital alleges "'[t]hat the plaintiff's injuries and damages, if any, may be caused in part by the conduct of David Dunnington, thus barring or diminishing

---

[2] Washington pattern instruction 11.01 defines "contributory negligence" as "negligence on the part of a person claiming injury or damage that is a proximate cause of the injury or damage claimed." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 11.01, at 133 (6th ed. 2012).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

any right to recover.'"[3] Resp't's App. at 164. Specifically, they point to two significant decisions made by the plaintiff that showcase his own negligence: (1) when he failed to return to the clinic for a follow-up appointment resulting in a three and a half month delay and (2) when he sought a second opinion from two other doctors, instead of having the recommended excision in December, resulting in a one month delay.

The plaintiff counters that the defendant failed to prove that Dunnington's alleged contributory negligence was a proximate cause of his injury. To show a lack of proximate cause, the plaintiff points to Dr. Ngan's deposition testimony that even if Dunnington came back in October for his follow-up visit, Dr. Ngan would not have diagnosed the lesion as melanoma. The plaintiff focuses narrowly on Dr. Ngan's differential diagnosis and his reasons for recommending a biopsy.

---

[3] The hospital relies on *Brooks v. Herd*, 144 Wash. 173, 177, 257 P. 238 (1927). There, the court found no error with the challenged jury instructions because the instructions, in the aggregate, "correctly state the law as to the respective duties of physician and patient toward each other." *Brooks*, 144 Wash. at 177. Specifically, the court pointed to the following jury instruction: "[W]hen a patient goes to a physician and accepts the professional skill of such physician, it is the duty of the patient to follow the advice of the physician, and if he fails to follow the advice of the physician and something untoward happens to the patient which would not have happened or was not the physician's negligence, then the physician would not be liable; and if the plaintiff failed to follow the advice of the doctor and thereby aggravated the ailment, the jury should find for the defendant." *Brooks*, 144 Wash. at 177. This jury instruction, and the principle that contributory negligence is a bar to recovery, has been replaced with RCW 4.22.005. Thus, the plaintiff can be liable for his own negligence, but his negligence doesn't bar recovery, it merely reduces his damages.

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

Looking at the facts in the light most favorable to the defendant, there is an issue of material fact. On September 1, 2011, Dr. Ngan recommended two courses of possible treatment: Dunnington's lesion could be surgically excised or conservatively treated with cryotherapy. Dunnington chose the conservative treatment. When Dunnington returned on September 15, 2011, the lesion appeared recalcitrant. Dr. Ngan once again informed Dunnington of his options, which included surgical excision and biopsy. Dr. Ngan favored surgical excision, but Dunnington chose conservative treatment once more. Dr. Ngan instructed Dunnington to return in two weeks; however, he did not. Instead, he returned in December, when Dr. Ngan instructed him that the next step was surgical excision and biopsy. Dr. Ngan alleged that if Dunnington returned in October and the lesion did not improve, he would have made the same recommendation as he did in December—surgical excision and biopsy. There is a clear dispute as to whether Dr. Ngan would have again recommended an excision in October if Dunnington had returned. If he did, the melanoma would have been revealed.[4]

---

[4] The plaintiff argues that Dr. Ngan's affidavit revealed that he would have conducted an excision only if the lesion did not improve, but the lesion was, in fact, responding to treatment. Yet, this characterization of the evidence is based on selected testimony and fails to consider the record as a whole and in a light most favorable to the defense.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dunnington v. Virginia Mason Med. Ctr.*, No. 91374-9

CONCLUSION

Traditional tort causation principles guide a loss of chance case. Applying these established principles, under the circumstances here, a but for cause analysis is appropriate. We affirm the trial court's ruling on this issue. We reverse the trial court's partial summary judgment dismissing the contributory negligence defense. We remand to the trial court for further proceedings.

WE CONCUR:

Madsen, J.

Wiggins, J.

Owens, J.

González, J.

Fairhurst, C.J.

Gerry McCleod, J.

Stephens, J.

Yu, J.

13